UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

KENNETH JAY HOULIHAN,

   Petitioner,

v.

LLOYD RAPELJE,

   Respondent.

Case No. 1:08-cv-1071

Honorable Paul L. Maloney

**REPORT AND RECOMMENDATION**

   This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a prison term of 20-to-40 years for first-degree criminal sexual conduct (CSC) (involving a person under thirteen years old), MICH. COMP. LAWS § 750.520b(1)(a), and a concurrent term of 13-1/3-to-20 years for causing a child to engage in sexually abusive activity for purposes of creating visual depictions thereof, MICH. COMP. LAWS § 750.145c(2). The Kent County Circuit Court imposed these sentences on April 24, 2001, after petitioner entered a plea of guilty to the charges. The guilty plea was based upon a plea agreement, pursuant to which the prosecutor dismissed three other felony criminal sexual conduct cases, which comprehended five other charges of CSC or child sexually abusive activity. Petitioner unsuccessfully challenged his conviction and sentences on direct appeal and in state post-judgment proceedings.

   The *pro se* petition raises two grounds for habeas corpus relief:

   I.  ATTORNEY JOHN P. PYRSKI MADE PROMISES OF A SENTENCING AGREEMENT BETWEEN THE DEFENSE AND THE PROSECUTION AT DEFENDANT['S] PRELIMINARY EXAMINATION IN EXCHANGE

> FOR A PLEA OF GUILTY, VIOLATING DEFENDANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
>
> II. THE TRIAL COURT ERRED IN ITS FAILURE TO EXPOSE THE FRAUD, IN THE AFFIDAVIT OF THE ALLEGED VICTIM'S IMPACT STATEMENT UNDER MCL 750.426, THUS DENYING DEFENDANT HIS CONSTITUTIONAL RIGHTS UNDER THE FOURTEENTH AMENDMENT AS TO EQUAL PROTECTION OF THE LAW.

(Amended Petition, docket # 5, ¶ 14). Respondent has filed an answer, accompanied by the record in the state trial and appellate courts. Chief Judge Paul L. Maloney has referred this matter to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Proceedings in the United States District Courts. Upon review of the record, I conclude that petitioner's habeas corpus claims are conclusively refuted by the trial court record. I therefore recommend that the habeas corpus petition be denied on its merits.

## **Proposed Findings of Fact**

### A. **State-Court Charges**

The state-court prosecution arose after Monte Palmer found nude pictures of his 12-year-old son, D.P., and one other child, along with notes detailing homosexual acts. Palmer and his ex-wife called the Kent County Sheriff's Department, who took statements from Palmer and D.P. The boy's statement, taken by Kent County Sheriff's deputies on February 27, 2001, indicated that D.P. met petitioner at Zoo School when D.P. was in the sixth grade. Petitioner was Admissions Manager at the school. Petitioner offered D.P. a job and then "sexual stuff started." "He did take photos of me nude." D.P. told officers that the sexual conduct had stopped one and a half to two years previously. The child denied that petitioner ever threatened him, but stated that petitioner

"made me feel bad if I didn't. 'I not worth anything.'" (Victim/Witness Statement Form dated 2/27/01, attached to Petition, ID# 21).

The ensuing investigation resulted in the lodging of the three separate criminal cases against petitioner, each charging him with various acts of criminal sexual conduct or production of photographs depicting sexual abuse of a child. Relevant to the present habeas corpus proceeding, the criminal Information in Kent County Circuit Court no. 01-02731 charged petitioner with two counts of CSC, first-degree, involving penile/oral penetration with D.P., then age 12, between June 18 and October 21, 1997. Count 3 charged petitioner with first-degree CSC involving penile/anal sexual penetration with D.P., then age 12. Count 3 contained an habitual offender supplement, based upon petitioner's conviction in 1984 of assault with intent to commit first-degree CSC. The Information informed petitioner that each of the charges was punishable by up to life imprisonment. The felony Information in case no. 01-02733 charged petitioner with three counts of causing a child to engage in sexually abusive activity for the purpose of creating visual depictions thereof. Again, the third count was supplemented by the habitual offender specification, based on petitioner's 1984 sexual assault conviction.

### B.    Guilty Plea Proceeding

Petitioner and his counsel appeared before Judge Dennis P. Leiber on April 24, 2001, for change of plea proceedings. (Plea Transcript (PT), docket # 13). At the outset of the proceedings, the assistant prosecutor and defense counsel set forth each of the then-pending charges, including multiple counts of criminal sexual conduct, that were comprehended in each of the three pending cases. Assistant Prosecutor Zerial stated that the plea offer was that petitioner would enter

a guilty plea to one count of criminal sexual conduct, first-degree, and one count of producing child abusive material, and that all other cases and counts would be dismissed. (PT, 3-4). "And that's the extent of the plea agreement as I understand it." (*Id.*, 4). The court asked defense counsel, John Pyrski, whether the prosecutor had made a "full statement of the entire plea agreement in these cases?" and Mr. Pyrski answered in the affirmative. (*Id.*, 5).

The court then placed petitioner under oath and questioned him to determine the knowing and voluntary nature of the guilty plea. Petitioner testified that he was 36 years of age and had graduated high school. (PT, 5-6). He stated that he understood the criminal sexual conduct charge and the charge of producing child sexually abusive material and that he intended to plead guilty to both charges. (*Id.*, 6-7). The court informed petitioner that if he entered a guilty plea, he could be sentenced to any term of years up to life on the criminal sexual conduct charge and up to 20 years on the charge of producing child sexually abusive material. (*Id.*, 7). The court then informed petitioner of the rights that he would be giving up by entry of a guilty plea, and petitioner testified that he understood those rights and had no questions about them. (*Id.*, 7-8). After petitioner tendered a guilty plea to each charge, the court engaged petitioner in the following colloquy concerning the plea agreement.

> THE COURT: Did you hear the plea offer stated by the prosecutor with the approval of your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is that the entire plea agreement as you understand it?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has anybody promised you anything else?

>    THE DEFENDANT: No, sir.
>
>    THE COURT: Has anybody threatened you to get you to plea guilty?
>
>    THE DEFENDANT: No, sir.
>
>    THE COURT: Is it your own choice to plead guilty?
>
>    THE DEFENDANT: Yes, sir.

(PT, 9-10).

The court then questioned petitioner concerning the factual basis of the guilty plea. Petitioner testified that he engaged in both oral and anal intercourse with D.P. on numerous occasions between June and October of 1997, at which time D.P. was 12 years old. This conduct occurred both at petitioner's home and at D.P.'s home. (PT, 10-12). Petitioner also admitted that he took about twenty Polaroid pictures of D.P. in the nude, depicting the boy's genitals. (*Id.*, 12-13). At the end of the plea colloquy, both attorneys indicated that the court had satisfied the requirements of the court rule with regard to taking guilty pleas, and the court made findings on the record that the pleas were understanding, voluntary, and accurate. The court further noted that "I have agreed to nothing with anyone in respect to these pleas or possible sentences." (PT, 14-15).

### C.    Sentencing

Petitioner and counsel appeared before Judge Leiber for sentencing on July 5, 2001. At the outset of the proceedings, the court acknowledged receipt of a letter from petitioner, which the court indicated it had read. (Sentencing Transcript (ST), docket # 14, at 3). When asked to comment on the accuracy of the presentence report, defense counsel objected only to the victim impact statement purportedly authored by D.P. Defense counsel contended that the letter purportedly

authored by D.P. was in the same handwriting as the letter tendered by his father, Monte. "Mr. Houlihan and I have looked at these two. Mr. Houlihan has helped [D.P] with his homework on many occasions. He says neither that statement nor that signature belongs to [D.P] and, to me, that indicates it's a fraud on the court." (ST, 4). Defense counsel demanded that the victim's statement be given in open court. "We believe that if [D.P.] were here he would ask for leniency, and I don't know what perspective you can put it in other than we believe it is a fraud on the court." (*Id.*, 5). Continuing in the same vein, defense counsel stated that petitioner and the child had a "relationship" which took "an unusual turn, one that is not approved by society." "[I]n all respects, Ken was everything to [D.P.] and [D.P.] was everything to Ken, and the fact that society doesn't approve of certain aspects of a relationship finds us here today." (*Id.*, 5).

Monte Palmer then exercised his right of allocution under Michigan's victim rights law. He told the court that the writing on the statement was his son's. "Nobody did it for him. He did it on his own, and I wouldn't try to deceive the Court that way." (ST, 7). Mr. Palmer informed the court that when petitioner met Palmer's son, the boy was going through a very difficult time because of a divorce and the deteriorating health of his grandfather. The boy was confused, hurt, and young. D.P. met petitioner through a teacher at the Zoo School and the relationship appeared at first to have a good effect on him. Within a short time, though, he was in a depression. Petitioner was trusted as a member of the family and he abused the trust. "Your Honor, what he did to my son was not a one-time deal. What this guy did, he calculated. He took a hurt child and abused him. This isn't somebody that just done this once. . . . He even went as far as to keep a detailed record of how he molested my son. He kept dates, he kept what he did, and he wrote comments down there on how good it made him feel." (*Id.*, 8). Mr. Palmer asked the court to take into consideration that his son

would suffer from petitioner's conduct for the rest of his life, and asked for the maximum sentence. (*Id.*, 8-9).

Petitioner was then given an opportunity for allocution. His statements made it clear that petitioner still did not recognize the boundaries between friendship and illicit sexual activity between an adult and a minor. Petitioner stated that D.P. was his "very best friend from the time we first met. We were two lonely people that needed a good friend when we found each other and just clicked even with the age difference." Addressing the victim directly, petitioner said, "You were the first person that told me you loved me and cared about me just because for no other reason. I loved and cared about you as my best friend and as a member of my family. . . ." "In my heart you will always be my best friend, and like the promise we made, I will never stop caring and loving about you as the truly best friend you have always been." (ST, 10-11). Petitioner told the court that no matter how much time the court gave him, "losing my best friend is more than anything you can give me." (ST, 11).

The court then imposed sentence. The court remarked that petitioner's interest in the boy was commendable but that his "sexual activity is unwarranted and condemnable." (ST, 12). The court expressed awareness that petitioner had himself been abused as a child but that petitioner had victimized "another person who is as innocent as you were when you were five years old." (ST, 12). Citing the need to protect society from repeated acts of a sexual predator, the court imposed a sentence at the top of the guideline range -- 160-to-240 months on the conviction for production of child sexually abusive material, and 20-to-40 years on the charge of criminal sexual conduct, first-degree. (ST, 13-14).

### D. Post-Conviction Review in the State Courts

Petitioner filed a *pro se* application for leave to appeal to the Michigan Court of Appeals. The only issue raised was a challenge to the provisions of Michigan law that denied appointment of appellate counsel as of right to defendant's appealing a plea-based conviction. By order entered January 2, 2003, a panel of the state Court of Appeals denied the application for lack of merit. (Appellate Record, case no. 242342, docket # 15). The state Supreme Court denied leave to appeal by order entered September 19, 2003, with two justices dissenting. (Supreme Court Record, case no. 123313, docket # 16).

On or around December 15, 2003, petitioner filed a motion for post-judgment relief pursuant to Mich. Ct. R. 6.500, raising the same two issues set forth in his present habeas corpus petition. On May 27, 2004, Judge Leiber entered an order denying the motion for relief from judgment, finding that the issues should have been raised on direct appeal and that petitioner failed to show good cause or actual prejudice to relieve him from the appellate default. (5/27/04 Order, found in Michigan Supreme Court Record, docket # 18). Petitioner filed a *pro se* application for leave to appeal to the state Court of Appeals, which denied review by order entered February 10, 2005. (Court of Appeals Record, case no. 256534, docket # 17). Petitioner filed an application for leave to appeal to the state Supreme Court on September 23, 2005. The court appointed the State Appellate Defender, who raised a Sixth Amendment claim arising from the denial of appointed counsel for the first appeal. Because petitioner had been denied appointment of appellate counsel during his direct appeal, the Michigan Supreme Court held the matter in abeyance pending a decision

by the Sixth Circuit on the question whether the rule of *Halbert v. Michigan*, 545 U.S. 605 (2005), should be applied retroactively to cases such as petitioner's.[1]

On February 15, 2008, the *en banc* Sixth Circuit decided that the rule in *Halbert* does not apply retroactively. *Simmons v. Kapture*, 516 F.3d 450 (6th Cir. 2008) (*en banc*). By order entered April 18, 2008, the Michigan Supreme Court denied leave to appeal, in light of the decision of the *en banc* Sixth Circuit. (Michigan Supreme Court Record, case no. 128340, docket # 18).

Petitioner, again acting through counsel, sought a writ of *certiorari* in the United States Supreme Court. By order entered October 6, 2008, the Supreme Court denied the application. *See Houlihan v. Michigan*, 129 S. Ct. 254 (2008).

By habeas corpus petition filed on December 22, 2008, petitioner raised the same two issues raised and rejected in post-conviction proceedings, namely, that his guilty plea was based on a promise by his attorney that he would receive only a 10-year minimum sentence and that his attorney was ineffective for failure to "expose a fraud upon the court" at sentencing.[2] Upon review of the record, I conclude that petitioner's habeas corpus claims are indisputably meritless and recommend that the petition be denied.

---

[1] In *Halbert*, the United States Supreme Court held that the provisions of Michigan law denying appointed appellate counsel to indigent defendants who had entered a guilty plea were unconstitutional. *Halbert* was decided in 2005, after petitioner's conviction had become final.

[2] Petitioner does not raise in his habeas corpus petition a Sixth Amendment claim under *Halbert*, apparently acknowledging that the *en banc* decision of the Sixth Circuit in *Simmons* renders such a claim meritless.

**Applicable Standard**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).

Even if a state court disposes of a constitutional claim without articulating its analysis, deferential review is required. The Sixth Circuit describes the review AEDPA requires under such circumstances as "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007); *see Cornwell v. Bradshaw*, 559 F.3d 398, 412-13 (6th Cir. 2009); *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005). Under the modified standard, "a federal habeas court must conduct an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly

established law, or is based on an unreasonable determination of the facts in light of the evidence presented. The independent review, however, is not a full *de novo* review of the claims." *Howard*, 405 F.3d at 467. The court must conduct a careful review of the record and applicable law, but it is barred from reversing unless the state court's decision is contrary to or an unreasonable application of federal law. *Id.* at 467-68; *see Sanborn v. Parker*, Nos. 07-5309, 07-5310, ___ F.3d ___, 2010 WL 5151744, at * 19 (6th Cir. Dec. 21, 2010); *Phillips v. Bradshaw*, 607 F.3d 199, 209 (6th Cir. 2010). "In other words, we must focus on the result of the state court's decision, applying AEDPA deference to the result reached, not the reasoning used." *Irick v. Bell*, 565 F.3d 315, 320 (6th Cir. 2009).

*De novo* review is restricted to instances where the state court did not address the merits of a claim. In that limited set of circumstances, "there are simply no results, let alone reasoning, to which [the habeas] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2009); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010).

**Discussion**

Petitioner first raised the two habeas issues now before the court in a post-judgment motion for relief filed under Mich. Ct. R. 6.500. Judge Leiber denied relief under Mich. Ct. R. 6.508(D), finding that defendant should have raised the issues on direct appeal and had not shown good cause for his failure to do so and resulting prejudice. (Order of 5/27/04). This finding by the trial court could allow respondent to invoke the bar of procedural default in this habeas proceeding. *See Murray v. Carrier*, 477 U.S. 478, 485 (1985). Respondent has not done so, however, and the defense may be deemed waived. *See Whiting v. Burt*, 395 F.3d 602, 610 (6th Cir. 2005).

The Michigan appellate courts denied review of these issues in standard, unexplained orders. Where a state court rejects a constitutional claim without articulating its analysis, its decision is entitled to "modified AEDPA deference." *See Vasquez*, 496 F.3d at 569-70. The habeas court conducts an independent review of the record and the law, but can grant relief only if the state court's result is contrary to or an unreasonable application of federal law. *Howard*, 405 F.3d at 467-68. Having conducted that review, I conclude that petitioner is not entitled to relief.

### I. Challenge to Validity of Guilty Plea

Petitioner challenges the validity of his guilty plea by alleging that his attorney promised him a specific sentence to induce his plea. Petitioner alleges that the secret agreement was that his "minimum sentence would be no less than 8 years and no more than 10 years." (Brief, docket # 1, at 4). He asserts that counsel instructed him that when questioned by the judge if any promises had been made, he was to answer "no, otherwise there would be no deal." (*Id.*).

The constitutional validity of a guilty plea entered in the state courts is to be judged under the due-process standard established in *Boykin v. Alabama*, 395 U.S. 238 (1969). Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause. A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). A guilty plea induced by promises or threats that deprive it of the character of a voluntary act is subject to collateral attack. *See Machibroda v. United States*, 368 U.S. 487, 493 (1962).

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea is voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact and to the judgment itself. *Id*. A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 506 U.S. 20, 29 (1992) (a presumption of regularity attaches to final criminal judgments). In the present case, the plea transcript shows a thorough interrogation of petitioner by the trial judge. Judge Leiber's questioning was more than sufficient to satisfy the due-process requirements that a guilty plea be demonstrably knowing and intelligent. Furthermore, both the court and counsel were careful to delineate the terms of the plea agreement and to establish petitioner's understanding of it. (PT, 3-5, 9-10). At the end of the proceedings, Judge Leiber specifically found that the plea was entered knowingly and voluntarily and that the court had made no commitments concerning sentence. (PT, 14-15). These findings are entitled to a presumption of regularity and place upon petitioner a heavy burden to overcome them. *Garcia*, 991 F.2d at 328; *see* 28 U.S.C. § 2254(e)(2) (factual findings of state courts presumed to be correct, and petitioner has the burden of rebutting them by clear and convincing evidence).

In the present case, petitioner now alleges that his guilty plea was induced by a secret promise that his minimum sentence would be in the range of 8-to-10 years.[3] In asserting that Mr.

---

[3] Under Michigan's indeterminate sentencing scheme, the court generally sets only a minimum sentence. MICH. COMP. LAWS § 769.8; *see People v. Drohan*, 715 N.W.2d 778, 789 (Mich. 2006). The maximum sentence is generally prescribed by law and is outside the court's

Pyrski made a sentencing promise to induce his guilty plea, petitioner faces a formidable barrier, erected by his own on-the-record denial of promises and the trial judge's careful colloquy at the time of taking his plea. At the plea hearing, Judge Leiber specifically asked petitioner whether anyone had promised him anything beyond the terms set forth on the record, to which petitioner answered, "No, sir." (PT, 9). In a now well-established line of authority, the Supreme Court and the Sixth Circuit have provided definitive guidance concerning the circumstances in which such on-the-record testimony during a guilty plea colloquy will be binding upon a criminal defendant, without the need for further evidentiary inquiry. In *Blackledge v. Allison*, 431 U.S. 63 (1977), the petitioner claimed that he was promised a maximum sentence of ten years by his attorney, but was actually given a sentence of 17-to-21 years. With regard to the weight that the habeas court should accord the plea proceedings in state court, the Supreme Court stated:

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge*, 431 U.S. at 73-74 (citations omitted). The Supreme Court nevertheless remanded for an evidentiary hearing, because no transcript whatsoever existed of the sentencing hearing. 431 U.S. at 66-67.

In later cases, the Sixth Circuit addressed the opposite situation, in which the trial judge's careful questioning of the defendant was reflected in a transcript, and the transcript negated

---

discretion. 715 N.W.2d at 789. For crimes punishable by imprisonment for any term of years or life, however, the court sets both a minimum and maximum sentence. MICH. COMP. LAWS § 769.9(2). The alleged promise in the present case concerned only the minimum sentence.

the defendant's later claim of involuntariness. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the Sixth Circuit distinguished *Blackledge*, indicating that the trial record exemplified the type of "commendable procedures" the *Blackledge* Court indicated would negate a later claim of involuntariness. 781 F.2d at 89. During the plea hearing, the trial court inquired concerning the terms of the bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit, agreeing with a previous Fifth Circuit case, held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement "if it consists of secret terms known only to the parties." 781 F.2d at 90. Furthermore, because defendant's later claim of a secret agreement was negated by the trial record, no evidentiary hearing was required. 781 F.2d at 92.

The Sixth Circuit again addressed this situation in *Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992), and *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also section 2255 cases. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. Defendant had stated, during the plea colloquy, that there were no other promises made to him, other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the court's inquiry, where there has been a

careful plea colloquy. On this basis, the court affirmed the district court's rejection of the section 2255 claim. 982 F.2d at 1029. Additionally, the court held that no evidentiary hearing was required, because the promise that defendant alleges "is directly refuted on the record." *Id.* The court distinguished earlier cases, in which the record did not clearly contradict the petitioner's allegations. In *Warner*, the Sixth Circuit likewise rejected claims of attorney promises in the face of the defendant's flat denial of promises at the plea, holding that petitioner's statements "estopped" him from relying on undisclosed promises.[4] 975 F.2d at 1210.

More recently, in *Ramos v. Rogers*, 170 F.3d 560 (6th Cir. 1999), petitioner alleged the existence of an "off-the-record" agreement to release him on probation after one year in prison. Relying on its previous decisions in *Baker* and *Warner*, the court rejected petitioner's challenge to the validity of his plea based upon an allegedly secret agreement. The court found that the state trial court's proper colloquy must be deemed to have cured any misunderstanding that the petitioner had concerning the consequences of his plea. 170 F.3d at 565. The *Ramos* court then established the following bright-line rule for cases such as the present one: "Thus a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can *never constitute* an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy." *Id.*

---

[4] The court in *Peavy v. United States*, 31 F.3d 1341 (6th Cir. 1994), ordered an evidentiary hearing to inquire into allegations of an undisclosed plea agreement. The *Peavy* court noted that the government admitted the existence of an oral plea agreement, not reflected during the plea hearing. 31 F.3d at 1345. The court was also careful to observe that the trial court had not directly asked the defendant whether there were any promises apart from the plea agreement. "Such inquiry would have prompted disclosure of the promises on which Peavy relies here, or, if Peavy had remained silent, *likely would foreclose his post-conviction reliance on [those] promises*." *Id.* (emphasis added).

In the present case, the state-court transcript not only shows that the plea was voluntary, but it also specifically negates the existence of a secret promise. Under the controlling cases of *Baker*, *Warner*, and *Ramos*, I conclude that petitioner is foreclosed from claiming a secret promise by counsel concerning his sentence. "To allow collateral attacks on guilty pleas to be based on such claims would make every plea subject to attack and render the oral responses given in court meaningless." *Warner*, 975 F.2d at 1212. Petitioner's sworn testimony at the plea hearing concerning the lack of any promise apart from the plea agreement precludes him from making such a claim now on habeas corpus review.

Petitioner's first claim for habeas corpus relief is conclusively refused by his testimony at the plea hearing. The challenge to the voluntariness of his plea must therefore be rejected.

## II. Ineffective Assistance of Counsel at Sentencing

Petitioner's second claim is that his trial counsel was constitutionally ineffective for "failing to expose a fraud on the court" at the time of sentencing. Petitioner asserts that a handwritten victim impact statement purportedly submitted by D.P. was in fact written by the victim's father and that defense counsel was ineffective for failing to expose the alleged fraud. Claims of ineffective assistance of counsel are analyzed under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must show that his attorney's performance was, under all the circumstances, unreasonable under prevailing professional norms and that there is a reasonable probability that the result of the case would have been different but for counsel's errors. 466 U.S. at 687-94.

Petitioner cannot meet either prong of the *Strickland* standard. First, contrary to petitioner's allegations, his counsel did indeed contend at sentencing that the victim impact statement was in the handwriting of the father, not the victim, and that this constituted "a fraud on the court." (ST, 4-5). Therefore, counsel did exactly what petitioner now claims he did not do. It is not counsel's fault that the court did not accept the challenge to the authenticity of the victim impact statement. During allocution, the victim's father denied the charge, and the court did not comment. Consequently, petitioner cannot show deficient performance by his counsel. Furthermore, he cannot possibly show prejudice. The theory of defense counsel in sentencing was that the victim's true attitude would be in favor of leniency for petitioner. It is virtually impossible that any sentencing judge would pay the slightest bit of attention to such a plea from a child who had been subjected to sexual abuse. The sentencing judge found petitioner's conduct "condemnable" and imposed sentence on the basis of the need to protect vulnerable children from petitioner, who was a repeat offender. The court obviously did not credit the challenge to the authenticity of the victim impact statement, and it is impossible that such a challenge would have had the slightest effect on the sentence. Petitioner's challenge to counsel's effectiveness at sentencing fails under both prongs of *Strickland* and should therefore be rejected.

**Recommended Disposition**

For the foregoing reasons, I recommend that the petition be denied on its merits.


Dated: January 5, 2011  /s/ Joseph G. Scoville
United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).